### PLAYTER v. COCHRAN *et al.*

1. **Tax sale:** VALIDITY OF: RELIEF AGAINST MISTAKES. That the owner failed to pay the taxes or to redeem from the sale, through oversight or under the belief that the taxes had been paid, will not relieve him from the effects of his omission, or warrant the setting aside of the sale. These are not mistakes from the effects of which equity will grant relief.

2. —— OMISSION OF CLERK AND TREASURER. Where there has been a regular and valid sale for taxes, a subsequent failure of the clerk of the board of supervisors in making up the tax books, to designate each parcel of land sold and not redeemed by writing the word " sold " opposite thereof, as provided by chapter 75, Laws of 1868, will not invalidate the sale.

3. —— Neither would the failure of the treasurer to notify a person offering to pay taxes on a tract' thus marked, that it had been sold, affect the validity of the sale.

*Appeal from Lee District Court.*

FRIDAY, OCTOBER 10.

THIS is a suit to quiet the title to the north-west half of lot nine, in block 173, in the city of Keokuk, Iowa. Judgment for defendants. Plaintiff appeals. The further facts appear in the opinion.

*Seaton & Allyn* for the appellant.

*Gillmore & Anderson* for the appellees.

MILLER, J.— The plaintiff claims to be the owner in fee of the premises in controversy. On the trial he supported this claim by the introduction in evidence of a tax deed, executed by the treasurer of the county on a sale of the lot for the taxes delinquent thereon for the years 1865 and 1866, held October 5, 1868. This deed is in all respects regular on its face, and, unless the matters set up by defendant to avoid its effect are sufficient for that purpose, and sustained by evidence, the legal title to the premises is vested in the plaintiff.

I. The first defense alleged is that, at the tax sale of the

premises, under which the plaintiff claims, there was collusion and fraud practiced, in that the purchasers at said sale agreed by and with each other that they would not bid against one another, whereby a fraud was practiced on the law, and the defendants, and that the tax deed executed in pursuance of such sale was void.

There is no proof or evidence whatever in support of these allegations, and consequently this defense must fall to the ground.

II. It is next alleged that if the taxes were delinquent, "it was the result of accident and mistake, and plaintiff cannot, in equity and good conscience, now claim as the result of an accident and mistake, property of the just value of $2,000, by reason of having paid for taxes the sum of $35.34, which is all he has paid on said real estate for taxes." They offer to refund this sum, with interest, penalty, etc., and make the answer a cross-bill, and pray the court to quiet the title in the defendants.

The defendant, Isaac K. Cochran, testified that he had owned the property in controversy for about twelve years; that he conveyed it by warranty deed, on the 5th of October, 1871, to Geo. W. Cochran; that he supposed the taxes for 1865 and 1866 had been paid, because he never let his taxes run by; that he had paid the taxes since 1866; that when he paid taxes of 1867, 1868, 1869, no notice was given to him by the treasurer that the lot had been sold for taxes; that the taxes of 1870 were paid by redeeming from the tax sale for that year, redemption made January, 1872; on cross-examination he stated as follows: "I am satisfied in my own mind that these taxes ('65 and '66) were paid, because I always paid my taxes, and this is the only reason." He also stated that he lived in Keokuk in 1865 and 1866. This is substantially all the evidence on the part of the defendants, and upon this evidence the district court rendered a decree that the plaintiffs' tax deed is invalid and that he shall execute to defendant, Isaac K. Cochran, a quit-claim deed to the premises within ten days. The court bases this decree upon the ground that "the tax deed was the result of a mistake on the part of Isaac K. Coch-

ran." This mistake consisted in a failure on the part of Cochran to pay his taxes when they became due and delinquent, and the further mistake of omitting to redeem from the tax sale until after the time for redemption had expired. This kind of mistakes, omitting to perform some act which the law enjoins upon the party, is usually termed negligence, against the consequence of which courts of equity do not relieve the negligent party. But it is insisted in argument that, because the treasurer permitted the defendant to pay the taxes on the lot subsequent to the sale thereof for taxes, without notifying him of such sale as required by law, therefore, his failure to pay his taxes through mistake was relieved of the consequences which usually attend such mistakes.

The statute (chap. 75, Laws of 1868) makes it the duty of the clerk of the board of supervisors, in making up the taxbooks, to designate each piece or parcel of land sold for taxes and not redeemed, by writing the word "sold" opposite each piece of real property which has been sold and not redeemed. The treasurer also is required, when any person offers to pay the taxes on a tract of land thus marked "sold," to notify him that it has been sold for taxes, and when sold. For willful neglect on the part of either the clerk or the treasurer to perform these duties, a penalty is imposed, which, when collected, is payable one-half to the school fund and the other to the party injured.

It seems too clear for argument that where there has been a regular and valid sale of real property for delinquent taxes, a subsequent failure of the clerk of the board of supervisors, or of the treasurer, to perform these duties imposed by the statute cannot have the effect to invalidate the tax sale. The neglect of the clerk or treasurer cannot affect the rights of the tax purchaser previously acquired. He is neither party nor privy to their neglect. And, again, the statute imposes a penalty upon the treasurer for his neglect, which may be recovered at the suit of the *party injured*. Most clearly, the defendant is not this injured party, if the treasurer's neglect has the effect to vitiate the tax sale. He would

be benefited thereby. It is plain, however, that this statute was enacted for the benefit and protection of the owner of land sold for taxes, by providing means whereby they should be notified of such sales in time for redemption, and that if the officers shall neglect their duties in the premises, whereby such land-owner suffers the time for redemption to expire, and the tax purchaser to acquire title to the land, such owner being thus injured by the neglect of the officers, may sue for and recover the penalty fixed by the statute, one moiety of which shall·be paid to him. It was not the tax purchaser whom the legislature intended to notify, but the owner of real property liable to be sold for taxes, hence the latter is the party injured by the neglect of the treasurer to perform the duties enjoined by the statute.

There is no ground upon which the decree of the district court can be sustained unless upon the ground that it is inequitable to allow a. tax purchaser, under any circumstances whatever, to acquire title to property worth $2,000 for $35.00. To thus hold is to annul the revenue statute. It provides that the tax deed, when executed, and recorded substantially as required by law, " shall vest in the purchaser all the right, title, interest and estate of the former owner in and to the land conveyed," and that it shall be conclusive evidence that the treasurer and clerk were not guilty of the omissions of duty complained of.

We cannot disregard the plain provisions of the statute whatever our notions of the equity of the case may be. The sale of lands for delinquent taxes has been said to be a proceeding in which " acres are sold for cents." So it is, necessarily, under our revenue laws, which in the abstract *may* be inequitable, but it is within the power of the legislature to so enact, and it is the duty of courts of equity as well as courts of law to abide by its enactments.

The decree of the district court will be reversed and the cause remanded with directions to enter a decree for the plaintiff, or if he so elect such decree will be rendered in this court. Reversed.